Strafford
No. 80-144

TOWN OF DURHAM

v.

ERNEST CUTTER, JR. & a.

April 3, 1981

*Barrett & McNeill P.A.*, of Durham (*John T. Barrett* on the brief and orally), for the plaintiff.

*Fisher, Parsons & Moran*, of Dover (*Stephen A. White* on the brief and orally), for the defendants.

DOUGLAS, J. This case involves a protracted dispute between the parties over the defendant Ernest Cutter's construction of a commercial parking lot on an undeveloped piece of land in a rural zone in Durham. In July of 1976, Cutter filled and leveled an area on his property large enough to park ten or more vehicles and began using it as a storage and parking area for commercial trucks and trailers and farm vehicles. In November, the board of selectmen informed Cutter that he was in violation of several articles of the zoning ordinance for failing to obtain site review approval from the planning board before building the parking lot. Cutter denied through counsel that the ordinances required site review approval, yet he filed an application for review that did not include three copies of a site map and two copies of specifications, as required by the town's non-residential site review regulations. After the parties' attempted settlement negotiations failed, the town filed a petition to enjoin the defendant Cutter, in his individual capacity and as owner and operator of two businesses, from using the parking lot until he obtained proper permits from the town's zoning authorities.

On June 28, 1978, on stipulated facts, the Strafford County Superior Court (*Mullavey*, J.) entered a decree requiring the defendants to submit a complete application for site review to the planning board and enjoining the defendants from using the lot until they obtained the proper permits. The court further decreed that the defendants had to return the land to its original state if they did not receive those permits. The defendants filed a motion for reconsideration and clarification of the decree. In August 1978, the court denied the motion and ordered the defendants to comply with the decree.

The court based its decree on section 10.32 of the Durham zoning ordinance. In October 1978, the Strafford County Superior Court (*Goode*, J.) ruled in an unrelated case that the Durham Planning Board's authority under section 10.32 of the zoning ordinance to require site review approval for internal changes to buildings exceeded the authority delegated to the town by RSA 36:19-a (Supp. 1979). *Davison v. Town of Durham*, No. E-7270 (Strafford Co. Sup. Ct., October 1, 1978). In April 1979, the defendants in this case filed a motion to dissolve the injunction based on the decision in the *Davison* case. The court denied the motion, and the defendants did not appeal.

On February 14, 1980, in another unrelated case, this court held

that, because Durham did not appeal the *Davison* decision, the town was collaterally estopped from relitigating the authority of the planning board to require site review for internal changes under section 10.32. *Cutter v. Town of Durham*, 120 N.H. 110, 411 A.2d 1120 (1980). Based on that decision, the defendants in this case again filed a motion to dissolve the injunction. This time the court granted the motion. It is from that order that the town now appeals.

The town argues that the superior court never should have entertained the defendants' second motion to dissolve the injunction because the defendants had raised the issue of the ordinance's validity in an earlier motion that the court had denied. The town now argues that the defendants' failure to appeal from that denial should preclude them from raising the issue in a new motion.

■■ "The heart of the doctrine of res judicata is that a final judgment by a court of competent jurisdiction is conclusive upon the parties in a subsequent litigation involving the same cause of action." *Concrete Constructors, Inc. v. The Manchester Bank*, 117 N.H. 670, 672, 377 A.2d 612, 614 (1977). The bar of res judicata applies not only to those matters actually litigated by the parties but also to those matters that *could have been* litigated. *Bricker v. Crane*, 118 N.H. 249, 253, 387 A.2d 321, 323 (1978). In civil actions, res judicata acts to preclude relitigation of an issue even when the statute under which a court rendered its decree is later found to be unconstitutional. *See Chicot County Dist. v. Bank*, 308 U.S. 371, 375 (1940). In this case, the defendants had an opportunity to raise the question of the ordinance's validity in the original proceeding, but they did not do so. They raised the issue in a subsequent motion to dissolve the injunction, but the court denied the motion, and the defendants failed to appeal. Ordinarily on these facts, res judicata would bar further inquiry. *Town of Nottingham v. Lee Homes, Inc*, 118 N.H. 438, 444, 388 A.2d 940, 943 (1978).

■■ Injunctions, however, are different from other judgments because the parties are often subject to the continuing jurisdiction of the court. *See System Federation v. Wright*, 364 U.S. 642, 647 (1961). Courts must, therefore, strike a balance "between the policies of *res judicata* and the right of the court to apply modified measures to changed circumstances." *Id.* at 647–48. A change in the law may require a court to modify an injunction, particularly where the conduct it was designed to prohibit becomes lawful. *See id.* at 650 n.6; *Town of Nottingham v. Lee Homes, Inc., supra* at 444, 388 A.2d at 944. In this case, if the ordinance is invalid, then

it would be inequitable to require Cutter to comply with its terms. Accordingly, we conclude that the trial court did not err in considering the defendants' motion to dissolve the injunction on the ground that section 10.32 had subsequently been declared invalid.

The issue then becomes whether the trial court properly granted the motion. The basis for the motion was this court's decision in *Cutter v. Town of Durham*, 120 N.H. 110, 411 A.2d 1120 (1980). In that case we held that, because the issue of the invalidity of section 10.32 had already been determined in another action, the town was collaterally estopped from litigating the issue of its authority under that section to require site review plans for internal changes to buildings. *Id.* at 112, 411 A.2d at 1121. In this case, the trial court gave no reason for granting the defendants' motion; however, because this case does *not* involve site review for *internal* changes, we assume that the court interpreted the *Cutter* decision to mean that the town had *no* authority under zoning ordinance section 10.32 to require site review approval.

■■ Partial invalidity of a zoning ordinance because certain authority exercised by a town under that ordinance exceeds the limits of statutory delegation does not require that the whole ordinance be struck down. *Town of Tuftonboro v. Lakeside Colony, Inc.*, 119 N.H. 445, 449, 403 A.2d 410, 412 (1979). Our decision in *Cutter* extended only to the authority of Durham to require site review plans for internal changes. *Cutter v. Town of Durham, supra* at 112, 411 A.2d at 1121. Because the case before us does not involve internal changes, we hold that the trial court erred in granting the motion to dissolve the injunction without first determining that the ordinance as a whole was invalid.

This case has been in dispute for almost four years. Accordingly, we will address the question of the town's authority under section 10.32 to require a site review plan in this case despite the fact that the trial court never ruled on the issue. *See Chwalek v. Dover School Committee*, 120 N.H. 864, 865, 424 A.2d 406, 407 (1980); *Merchants &c. Cas. Co. v. Capobianco*, 100 N.H. 223, 227, 123 A.2d 159, 163 (1956).

■ Durham passed its site review ordinances pursuant to authority delegated by RSA 36:19-a (1965) (current version at Supp. 1979), which reads in part:

"A municipality . . . may . . . empower the planning board to review, and approve or disapprove site plans for the development of tracts for nonresidential uses, or for multi-family dwelling units other than one and two-

family dwellings, whether or not such development includes a subdivision or re-subdivision of the site."

The Durham ordinances read in part:

"10.31 *Authorization.* In addition to its power to regulate residential subdivision, the Planning Board . . . is empowered to review, and approve or disapprove, site plans for the development of tracts for non-residential uses whether or not such development includes a subdivision or re-subdivision of the site.
10.32 *Site Review Required.* . . . The Planning Board shall require site plans be submitted to it for review by any applicant seeking any new or altered non-residential use, whether or not such application is one for which a building permit, special exception or variance is required. Planning Board approval of such site plans shall be a necessary prerequisite to issuance of any building permit, special exception or variance for such a use. . . ."

The language of ordinance section 10.31 is almost identical to the language of the enabling statute. Thus, on its face the ordinance does not exceed the authority delegated by RSA 36:19-a (1965) (current version at Supp. 1979). *See Town of Tuftonboro v. Lakeside Colony, Inc.*, 119 N.H. at 448–49, 403 A.2d at 411–12.

■■ In *Davison v. Town of Durham supra*, the superior court determined that the town could not require site review approval for internal changes to buildings. That finding is not equivalent to a finding that the ordinance as a whole is invalid. *Town of Tuftonboro v. Lakeside Colony, Inc., supra* at 449, 403 A.2d at 412. Zoning ordinances are not lightly to be declared invalid. *See Town of Nottingham v. Harvey*, 120 N.H. 889, 892, 424 A.2d 1125, 1127 (1980); *Rochester v. Barcomb*, 103 N.H. 247, 253, 169 A.2d 281, 285 (1961). We will not strike down the entire ordinance unless we conclude that the town would not have enacted the site review ordinance without the invalid provision. *Fernald v. Bassett*, 107 N.H. 282, 285, 220 A.2d 739, 742 (1966). Since the town carefully modeled its ordinance on the enabling statute, we cannot conclude that it intended that the ordinance stand or fall based on the validity of one provision. We find, therefore, that section 10.32 is valid, except insofar as it requires site review for internal changes.

■ We next must decide whether it applies in this case. The ordinances require site review plans "for the development of tracts for non-residential uses." The defendants concede that they used

the parking lot for commercial vehicles, a non-residential use, but they argue that site review is not required because the lot is an adjunct to their present use of the property, not a new use. We find that argument unpersuasive.

The ordinances apply to "development of a tract." Although neither the enabling statute nor the ordinances define this term, the model non-residential site plan review regulations published by the Governor's Office of Comprehensive Planning define "development" as "the construction of improvements. . . ." 2 OFFICE OF COMPREHENSIVE PLANNING, OFFICE OF THE GOVERNOR, STATE OF NEW HAMPSHIRE, GROWTH MANAGEMENT 88 (1977). That definition effectuates the general purpose of site review, which is to regulate the layout of buildings and open space, including parking areas. 5 N. WILLIAMS, AMERICAN PLANNING LAW § 152.01 (1975). Because the construction of a parking lot to enhance the existing use of property falls within that definition, we hold that section 10.32 requires site review plans in this case. Having determined that the ordinance is valid and that it applies to the facts of this case, we hold that the trial court was correct in issuing the injunction and was in error in dissolving it.

The defendants have cross-appealed from the superior court's denial of their motion for reconsideration and clarification of the June 1978 injunction decree. Although the defendants assert that "[b]y agreement the appeal to the Supreme Court was held in abeyance until such time as the entire case in controversy could be transferred," the record contains no such agreement.

The record contains the defendant's July 31, 1978, motion requesting the court to hold their reserved case in abeyance *until the Court has acted upon the motion for reconsideration and clarification* of the decree of this Court." (Emphasis added.) The court granted the motion and denied the defendant's motion for reconsideration and clarification on August 3, 1978. Consequently, the reserved case was held in abeyance only until August 3, 1978. Because the defendants did not bring the reserved case forward until two years later, their appeal is untimely and we will not consider it.

*Reversed and remanded.*

All concurred.